**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JTH TAX, INC.,** d/b/a **LIBERTY TAX SERVICE,**

                     **Plaintiff,**              **1:10-cv-295**
                                                       **(GLS\RFT)**

                     **v.**

**MITRA GOUNEH** and **UNCLE SAM'S TAXES, INC.,**

                       **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Greenberg, Traurig Law Firm<br>54 State Street, 6th Floor<br>Albany, NY 12207 | CYNTHIA E. NEIDL, ESQ. |
| **FOR THE DEFENDANTS:**<br>Office of Craig Meyerson<br>Airport Park<br>17 British American Boulevard<br>Latham, NY 12110 | CRAIG MEYERSON, ESQ. |

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff JTH Tax, Inc. brought this action against defendants Mitra

Gouneh and Uncle Sam's Taxes, Inc. (UST), alleging trademark infringement and unfair competition under the Lantham Act[1] and New York common law, violations of New York General Business Law § 349, breach of an employment agreement, misappropriation of trade secrets, business interference, and unjust enrichment. (*See* Compl., Dkt. No. 1.) Pending are Gouneh and UST's motions to dismiss, for summary judgment, and for the court to reconsider its March 26, 2010 Order granting a Temporary Restraining Order and Preliminary Injunction. (Dkt. No. 39.) For the reasons that follow, Gouneh and UST's motion to dismiss is granted in part and denied in part. However, the motions for summary judgment and reconsideration are denied.

## II. Background

### A. Factual History

JTH Tax, Inc., doing business as Liberty Tax Service, is a corporation that advertises and promotes a system of tax preparation centers. (*See* Compl. ¶¶ 2, 9, Dkt. No. 1.) JTH also licenses to others the right to operate facilities under the name "Liberty Tax Service" and the right to use its federally registered marks, which include costumed mascots resembling

---

[1] 15 U.S.C. § 1114, *et seq.*

Uncle Sam and Lady Liberty.  (*See id.* at ¶¶ 10-11.)  In advertising and promoting its system of tax preparation centers, JTH has spent considerable amounts of money featuring these marks.  (*See id.* at ¶¶ 12-13.)  In doing so, JTH alleges that its continuous use of these marks has made them prominent, famous, and culturally iconic, and has generated "a substantial amount of good will and an enviable national reputation among relevant consumers."  (*Id.* at ¶¶ 13-14.)  And according to JTH, because the marks are "inextricably intertwined" with JTH's methods, procedures, reputation, and high standards, the benefits of its continuous use of the marks are vital to its operations since licensees use Liberty's name and marks in connection with their tax preparation centers.  (*Id.* at ¶¶ 15-17.)

Prior to June 2009, pursuant to a Franchise Agreement between JTH and Joseph Citone, Inc., Citone was authorized to use the Liberty name and marks in operating a group of Liberty Tax Service offices in the Schenectady County and Albany County area.  (*See id.* at ¶ 18.)  Among these offices was one located at 1714 Route 9, Clifton Park, and another located at 119 State Street, Schenectady.  (*See id.* at ¶ 20.)  During this time, Citone hired defendant Mitra Gouneh to work as a manager and tax preparer at the Clifton Park office.  (*See id.* at ¶¶ 21, 23-24.)  In connection

with her employment, Gouneh allegedly signed an Employment Agreement that contained an express written promise of confidentiality regarding customer information. (*See id.* at ¶ 21.)

In June 2009, JTH bought the franchise back from Citone, including the Clifton Park and Schenectady offices. (*See id.* at ¶ 19.) Sometime thereafter, the Schenectady office was closed. (*See id.* at ¶ 27.) Gouneh remained employed by JTH at the Liberty Clifton Park Office. (*See id.* at ¶ 22.) Throughout her employment, Gouneh had access to confidential information concerning JTH's customers' names, addresses, and tax information. (*See id.* at ¶ 25.)

On August 4, 2009, while still allegedly employed by JTH, Gouneh incorporated Uncle Sam's Taxes, Inc. and subsequently opened a tax preparation business under the name "Uncle Sam's Taxes," with offices at two locations. (*See id.* at ¶¶ 26-27.) The first UST office was located at the same location as Liberty's Schenectady Office, 119 State Street. (*See id.* at ¶ 27.) The second office was opened at 1741 Route 9, Clifton Park, less than half a mile from Liberty's office. (*See id.* at ¶ 28.)

Over the next six months, UST began advertising and promoting its business in the Schenectady and Clifton Park area, which included the use

4

of costumed mascots allegedly dressed like the mascots trademarked by JTH. (*See id.* at ¶ 29.) For instance, JTH alleges that on January 6, 2010, Katie Lovelace, an employee or agent of UST, was outside UST's Schenectady office dressed in a costume resembling Uncle Sam waving at passersby in an effort to advertise and promote UST's business. (*See id.* at ¶ 30.) In response, JTH sent a letter on January 15, 2010, to UST and Gouneh demanding that they cease and desist their use and consequent infringement on JTH's federally registered Uncle Sam mascot trademark. (*See id.* at ¶ 31.) On January 28, 2010, JTH sent a second cease and desist letter. (*See id.*) Nonetheless, according to JTH, from January to March 2010, UST continued to use the Uncle Sam costume in advertising and promoting its business. (*See id.* at ¶ 32.)

Also in January 2010, UST and Gouneh conducted a direct mailing campaign in which they sent out a postcard that read "Uncle Sam's Taxes WANTS YOU" on the front and "TO KNOW ... that Mitra Gouneh has moved" on the back. (*Id.* at ¶ 33.) According to JTH, this postcard was mailed to various individuals who were customers of Liberty during Citone's franchisement and without its permission and consent. (*See id.* at ¶ 34.)

As a result of these advertising methods, JTH contends that its

5

customers have and will continue to incorrectly assume that Liberty and UST are affiliated, that the services being offered by UST are those of Liberty, and that Liberty has sponsored, endorsed, or approved of UST's operations.  (*See id.* at ¶ 36.)  In support of this contention, JTH alleges that it has received numerous inquiries into whether UST is the same office or organization as Liberty.  (*See id.* at ¶ 35.)

## B.     Procedural History

On March 12, 2010, JTH commenced the present action against Gouneh and UST, asserting claims of trademark infringement, unfair competition, deceptive business practices, breach of employment agreement, misappropriation of trade secrets, business interference, and unjust enrichment.  (*See* Compl., Dkt. No. 1.)  In its prayer for relief, JTH sought treble and punitive damages and attorneys' fees.  (*See id.* at 16.)

JTH also sought a temporary restraining order (TRO) and injunctive relief to compel Gouneh and UST to refrain from using the Uncle Sam costume and to stop using and return any customer lists and information removed from any Liberty office.  (*See id.* at 15.)  After JTH moved for an order to show cause on March 15, 2010, (*see* Dkt. No. 7), the court held a hearing on March 25 at which counsel for both parties were present.  After

6

evaluating the parties' written submissions and oral arguments, the court granted a preliminary injunction and TRO in favor of JTH. (*See* Dkt. No. 24.) The following day, the court issued a written Order further outlining the nature and extent of the injunctive relief being granted to JTH. (*See* Dkt. No. 32.)

Shortly thereafter, Gouneh and UST filed a motion requesting the court's reconsideration of the March 25, 2010 Order pursuant to FED. R. CIV. P. 60, and also seeking dismissal under FED. R. CIV. P. 12(b)(1) and 12(b)(6), and summary judgment under FED. R. CIV. P. 56. (*See* Dkt. No. 39.) JTH subsequently moved to strike Gouneh and UST's reply memorandum of law, contending that the filing deadline was April 26, 2010, that it was not filed until April 30, 2010, and that it is therefore untimely and should be disregarded. (*See* Dkt. No. 48.)

## III. Standard of Review

The standard of review for a motion to dismiss is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Dixon v. Albany County Bd. of Elections*, No. 1:08-CV-502, 2008 WL 4238708, at *2 (N.D.N.Y. Sept. 8, 2008). Still, in light of defense counsel's apparent confusion regarding notice pleading

7

and preliminary motion practice, the court will provide a refresher as to what may and may not be considered when evaluating pre-discovery dispositive motions.

In ruling on a motion to dismiss, "the district court must limit itself to a consideration of the facts alleged on the face of the complaint and to any documents attached as exhibits or incorporated by reference." *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (citations omitted). Still, a document that is not incorporated by reference may nevertheless be considered "where the complaint relies heavily upon its terms and effects, which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted). And while the purpose of this restriction is to provide the plaintiff with notice of and an opportunity to respond to the documents being considered, *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough," *Chambers*, 282 F.3d at 153.

Ultimately, where material outside the complaint is presented in

8

support of a Rule 12(b)(6) motion, the court has two options: "the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under FED. R. CIV. P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (citations omitted); *see also* FED. R. CIV. P. 12(d).  However, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec*, 949 F.2d at 48.

   Here, in seeking dismissal of and/or summary judgment on several of JTH's claims, Gouneh repeatedly asserts that JTH has failed to offer concrete proof in support of certain allegations.  In support of these assertions, Gouneh relies on evidence that is clearly extrinsic to the complaint, including two Gouneh declarations with attached exhibits, (Dkt. Nos. 22:2, 23:1), Kelly Marshall's declaration, (Def. Ex. D, Dkt. No. 23), the United States Patent and Trademark Office's February 16, 2010 response to UST's trademark application, (Def. Ex. A, Dkt. No. 25), and the declarations of Tanya Leonard and Robert Willison, which were submitted

9

by JTH in support of its motion for a TRO, (Dkt. Nos. 7:7, 7:10).

While these documents may have been proper fodder for the TRO hearing and may eventually have an impact on the proceedings, the court will neither consider them nor evaluate their validity or applicability in the current context.[2] And as we are in the preliminary throes of litigation, such that the parties have not yet engaged in any discovery, the court is unwilling to address Gouneh and UST's arguments as they relate to summary judgment.

## IV. Discussion

### A. Motion to Disregard

Preliminarily, JTH contends that Gouneh and UST's reply memorandum of law, (Dkt. No. 47), should be disregarded by the court because "[d]efendants failed to seek leave for an extension, and have not even attempted to demonstrate good cause for their untimely filing." (Dkt. No. 48.) The court fully agrees with JTH's assertions and is troubled by Gouneh and UST's failure to offer any justification for their untimely filing.[3]

---

[2]For the same reasons, the court grants JTH's May 25, 2010 letter motion, (*see* Dkt. No. 51), and will disregard defense counsel's May 25, 2010 letter, which is professed to be an accurate status report, (*see* Dkt. No. 50).

[3]This is particularly so since, in an unrelated matter, defense counsel recently asked this court to strike an adversary's reply memorandum that was a mere one day late. Thus,

Nonetheless, because Gouneh and UST's four-day delay did not result in any appreciable harm or prejudice to JTH, the motion to disregard is denied, and the court will receive Gouneh and UST's reply memorandum.

**B.     Claims Involving Defendants' Use of Proprietary Information**

UST first argues that insofar as counts five through eight of the complaint are against UST, those counts should be dismissed because there are no allegations that JTH entered into a confidentiality agreement with UST.

**1.     Breach of Employment Agreement**

As to JTH's fifth claim for breach of an employment agreement, the court is inclined to agree with UST. First, the allegations contained in count five seem to be limited to Gouneh and her alleged misconduct. (*See* Compl. ¶¶ 72-73, Dkt. No. 1.) Second, neither the complaint nor JTH's papers submitted in opposition to UST's motion contend that UST entered into an agreement with JTH or should be held specifically liable for the alleged breach. (*See generally* Pl. Resp. Mem. of Law, Dkt. No. 44.) And third, having considered JTH's allegations and arguments, the court is

---

defense counsel is fully acquainted with Local Rule 7.1, which provides that "[t]he Court shall not consider any papers required under this Rule that are not timely filed or are otherwise not in compliance with this Rule unless good cause is shown." N.D.N.Y. L.R. 7.1(b)(3).

11

unable to envision a basis upon which UST as an entity could be liable for breach of an agreement entered into between Gouneh and JTH. Therefore, for these reasons, the court dismisses JTH's claim of breach as it relates to UST. However, to the extent Gouneh is seeking dismissal of the claim of breach against her, that request is denied.

**2.      Misappropriation, Interference, and Unjust Enrichment**

As to count six, misappropriation of trade secrets, count seven, interference with business and business opportunity, and count eight, unjust enrichment, the court disagrees with UST. UST essentially argues that the absence of a confidentiality agreement between it and JTH mandates dismissal of counts six, seven, and eight. However, the complaint adequately alleges UST's direct involvement in and conduct giving rise to these claims. (*See* Compl. ¶¶ 75-80, 82-87, 89-91, Dkt. No. 1.) Moreover, the court finds UST's logic unsound.

To make out a claim for misappropriation of trade secrets, a plaintiff must allege "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir.

2009) (citation omitted); *see, e.g.*, *Penrose Computer Marketgroup, Inc. v. Camin*, 682 F. Supp.2d 202, 213-14 (N.D.N.Y. 2010). "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999) (internal quotation marks and citations omitted). Here, JTH has adequately alleged that it held a trade secret in the form of confidential customer information, and that Gouneh and UST obtained this information as a result of Gouneh's breach of a confidentiality agreement and UST's discovery by improper means. (*See* Compl. ¶¶ 75-80, Dkt. No. 1.) The existence of an agreement is merely one of the grounds upon which liability may be predicated. Thus, the lack of an agreement between JTH and UST is not fatal to JTH's claim of misappropriation. Accordingly, the motion to dismiss JTH's claim of misappropriation of trade secrets is denied.

A plaintiff asserting a claim for tortious interference with business and business opportunity must establish four elements: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used

13

dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (citations omitted); *see also Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189-90 (N.Y. 2004). In making this showing, the plaintiff must establish that the defendant "interfere[d] with the business relationship directly ... [by] direct[ing] some activities towards the third party and convinc[ing] the third party not to enter into a business relationship with the plaintiff." *Fonar Corp. v. Magnetic Resonance Plus*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997) (citation omitted). In asserting this claim, JTH alleges that after communicating its business model and business opportunities in confidence to Gouneh, Gouneh and UST adopted and used this information to intentionally deprive JTH of its business opportunities and relationships. (*See* Compl. ¶¶ 82-85, Dkt. No. 1.) JTH further alleges that UST and Gouneh's adoption and use of its trademarks, marketing system, and confidential information violates several New York laws, that they engaged in such conduct willfully, wantonly, maliciously, and with the specific intent to interfere with JTH's business interests, and that their conduct directly and proximately caused JTH harm. (*See id.* at ¶¶ 84-87.) As already stated, these allegations are sufficient and illustrate that the

14

existence of an agreement is not essential.  Accordingly, the motion to dismiss JTH's interference claim is denied.

"To recover on a theory of unjust enrichment[,] a plaintiff must [allege] that the defendant was enriched, that such enrichment was at plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to the plaintiff."  *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir. 1983) (citation omitted).  While it is generally "impermissible ... to seek damages in an action sounding in quasi contract where ... the existence of [a valid written agreement] is undisputed," *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (N.Y. 1987), unjust enrichment may be pleaded in the alternative to a claim for breach where the existence of a valid agreement is in dispute.  *See, e.g.*, *Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp.2d 100, 114 (E.D.N.Y. 2009); *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp.2d 185, 195-96 (S.D.N.Y. 2009).  JTH has alleged that Gouneh and UST acquired its confidential customer lists through improper means and at its expense, that Gouneh and UST used and benefitted from the use of these lists, and that in equity and good conscience they should return both the lists and any

15

benefits they acquired in using the lists.  (*See* Compl. ¶¶ 89-91, Dkt. No. 1.)

These allegations adequately make out a claim for unjust enrichment.

UST's contention that the absence of an agreement militates in favor of

dismissal is puzzling since unjust enrichment operates precisely where an

enforceable agreement cannot be found.  Therefore, to the extent UST or

Gouneh move to dismiss JTH's claim of unjust enrichment, the motion is

denied.

**C.     Breach of Fiduciary Duty**

While Gouneh interprets JTH's complaint to "be alleging that Gouneh

breached a fiduciary duty by creating a competing business," (Def. Mem. of

Law at 3, Dkt. No. 39:3), the court is hard pressed to find language in the

complaint that explicitly or implicitly raises such a claim.  Nonetheless, the

court will grant Gouneh's motion to dismiss to the extent she seeks

dismissal of any claim for breach of fiduciary duty.

**D.     Trademark Infringement**

**1.     Individual Liability**

Gouneh argues that counts one through four should be dismissed

against her because "[t]rademark use was by [UST], not Gouneh

personally."  (Def. Mem. of Law at 3, Dkt. No. 39:3.)  However, JTH has

adequately alleged Gouneh's personal involvement in engaging in trademark infringement, unfair competition, and deceptive business acts or practices.  Furthermore, because "[t]he owner of a trademark is entitled to protection against all who play a significant role in accomplishing an unlawful infringement," any person "participating in the unlawful infringement of a trademark may be liable even though merely acting as [an] officer[] of a corporation."  *Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781, 2009 WL 1675080, at *17 (S.D.N.Y. June 10, 2009) (internal quotation marks and citations omitted); *see also Cartier v. Aaron Faber, Inc.*, 512 F. Supp.2d 165, 170 (S.D.N.Y. 2007) ("[A] corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active conscious force behind the defendant corporation's infringement." (citations omitted)); *Chloe v. DesignersImports.com USA, Inc.*, No. 07-CV-1791, 2009 WL 1227927, at *11 (S.D.N.Y. Apr. 30, 2009) ("[T]he individual liability of a corporate officer for [her] participation in unlawful conduct is distinct from any issues of piercing the corporate veil." (internal quotation marks and citation omitted)).  Accordingly, as Gouneh's arguments are meritless, the court denies her motion to dismiss counts one through four.

17

**2.      Exhaustion of Administrative Remedies**

Gouneh and UST's argument that this court lacks subject matter jurisdiction due to JTH's failure to exhaust its administrative remedies is unfounded as it wholly misconstrues the scope and applicability of 15 U.S.C. §§ 1063 and 1064.  There is nothing in JTH's complaint or opposition papers to suggest that JTH is seeking to challenge or cancel the registration of UST's purported service mark.  Rather, JTH alleges, among other things, that UST and Gouneh have infringed on its service marks, which is exactly the type of action that this court has original jurisdiction over.  *See* 15 U.S.C. §§ 1114, 1121, 1125; 28 U.S.C. § 1338.  Therefore, Gouneh and UST's motion to dismiss for lack of subject matter jurisdiction is denied.

**E.      Motion for Reconsideration**

Gouneh and UST ask the court to reconsider the March 26, 2010 Order granting JTH a preliminary injunction and TRO based on the Order's supposed vagueness and insufficient specificity.  (*See* Def. Mem. of Law at 8, Dkt. No. 39:3.)  Without evaluating the extent to which the court actually has authority to entertain the motion in light of Gouneh and UST's pending appeal of the TRO, (*see* Dkt. No. 33), the motion is denied since Gouneh

18

and UST cannot "point to controlling decisions or data that the court overlooked ... that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).

"[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* Gouneh and UST's argument, which is couched in terms of "vagueness," is actually a disingenuous and thinly-veiled attempt to reargue the issues already decided during the March 25, 2010 hearing, at which defense counsel was present, argued, and offered evidence. And as defense counsel is aware, the court discussed at length the basis and reasoning for issuing the TRO and preliminary injunction. (*See* Mar. 25, 2010 Hr'g Tr. at 44-48, Dkt. No. 42.) Moreover, the March 26, 2010 Order is sufficiently specific and descriptive. (*See generally* Dkt. No. 32.) Accordingly, the motion for reconsideration is denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Gouneh and UST's motion to dismiss (Dkt. No. 39) is **GRANTED** insofar as JTH's claim against UST for breach of employment

19

agreement and JTH's claim against Gouneh for breach of fiduciary duty are **DISMISSED**; and it is further

**ORDERED** that Gouneh and UST's motion to dismiss (Dkt. No. 39) is **DENIED** as to JTH's remaining claims; and it is further

**ORDERED** that Gouneh and UST's motion for summary judgment (Dkt. No. 39) is **DENIED**; and it is further

**ORDERED** that Gouneh and UST's motion for reconsideration (Dkt. No. 39) is **DENIED**; and it is further

**ORDERED** that JTH's April 30, 2010 motion to disregard (Dkt. No. 48) is **DENIED**; and it is further

**ORDERED** that JTH's May 25, 2010 motion to disregard (Dkt. No. 51) is **GRANTED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 25, 2010
Albany, New York

_____
United States District Court Judge